UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

NOV - 5 2012
CLERK, ...

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | Criminal Action No. 3:12CR47-JRS-5 |
| ) | |
| TORRY VON ZENON ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Torry Von Zenon's Motion for Change of Venue (ECF No. 134.) Defendant requests that the Court transfer venue of this case to the United States District Court for the District of Maryland. The Government opposes a transfer. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials presently before the Court, and argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, Defendant's Motion is DENIED.

## I. BACKGROUND

Defendant is one of nine (9) defendants[1] in a large-scale drug trafficking conspiracy case. Defendant is charged with Conspiracy to Possess with Intent to Distribute Five Kilograms or More of Cocaine in violation of 21 U.S.C. § 846 (Count One) and Attempt to Possess with Intent to Distribute Five Kilograms or More of

---

[1] The indictment against Virginia Alvarez, the second defendant in this case, was dismissed on August 13, 2012 following her death. (*See* Mot. to Dismiss Indictment as to Virginia Alvarez, ECF No. 66; Order Granting Mot. to Dismiss Indictment as to Virginia Alvarez, ECF No. 81.) Accordingly, there are eight (8) surviving defendants.

Cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2 (Count Two). The relevant allegations are as follows. The conspiracy allegedly began in January 2012, when Hiram Alvarez contacted an individual, now revealed to be a Cooperating Source ("CS # 1"), about supplying one-hundred (100) kilograms of cocaine for customer Dion Williams, who would pay roughly $2.5 million for the cocaine. On or about January 25, 2012, Alvarez allegedly instructed CS # 1 to fly to Richmond, Virginia, along with Alvarez's representative, Oscar Gonzalez-Martinez (a/k/a "Pedro Santana"). Although the transaction was to take place in Baltimore, Maryland, Alvarez purportedly stated that "travel through Richmond, Virginia was necessary to avoid law enforcement drug interdiction efforts that could be encountered at the Washington, D.C. and Baltimore, Maryland airports." (Indictment 4 ¶ 2, ECF No. 3.) CS # 1 and "Santana" were to rent a vehicle in Richmond and drive to a hotel located in Owings Mills, Maryland. On or about January 26, 2012, "Santana," CS # 1, and a second Cooperating Source ("CS # 2"), allegedly flew from Dallas, Texas, to Richmond, where they then rented a vehicle and drove to Owings Mills, Maryland. On January 27, 2012, Williams met the three men upon their arrival at the designated hotel, and then led the group to Von Zenon's apartment in Owings Mills, where the transaction was to take place.

Upon the group's arrival in Von Zenon's apartment, Williams informed CS # 1 that he had roughly $1.5 million of the $2.5 million purchase price and was in the process of obtaining the remaining $1 million. While the money was counted inside, Von Zenon allegedly conducted counter-surveillance outside of the apartment. After verifying the amount of money, the Government claims that "Santana" and both Cooperating Sources

2

agreed to and did return to Richmond in order to prepare the shipment of cocaine for delivery to Maryland the next day. However, this delivery did not occur because Von Zenon was arrested in his apartment along with Williams and a third person on the evening of January 27, 2012. Among other items, a search of Von Zenon's apartment uncovered nearly $1.5 million in U.S. currency, two money counters, and two handguns.

As is relevant here, the Government further contends that Alvarez and his wife continued to work with CS # 1 following the arrests in February 2012, unaware that CS # 1 was cooperating with law enforcement. The Alvarezes allegedly arranged for CS # 1 to attend a meeting in Richmond with a broker, Topeka Sam, who sought to purchase twenty-five (25) kilograms of cocaine for a buyer in New York and a buyer in Maryland. On March 7, 2012, the two Cooperating Sources and an undercover agent met with Sam and Susan Smallwood, whose home was to be the location of the proposed transaction, at a restaurant in Richmond. The cooperating sources and undercover agent allegedly revealed over fifty (50) kilograms of cocaine to Sam, and Sam agreed to meet with the sources the following day at Smallwood's home in Maryland to complete the transaction. The cooperating sources met with Sam, Smallwood, and the buyers at Smallwood's home, and subsequent traffic stops by Maryland law enforcement resulted in the seizure of roughly $340,000 of the money that was to be exchanged in the planned drug transaction. Sam and Percy Robinson, the person who had produced money for the exchange at Smallwood's home, were subsequently arrested after they returned to Richmond and met with an undercover agent to discuss another proposed transaction.

Von Zenon and Williams are the only two remaining defendants who stand indicted and face trial in this matter. The Government has responded in opposition to Von Zenon's Motion.

## II. STANDARD OF REVIEW

A criminal defendant has a constitutional right to be tried in the district where the offense was allegedly committed, unless a statute or the Federal Rules of Criminal Procedure provide otherwise. *See* U.S. Const. art. III, § 2, cl. 3; U.S. Const. Amend. VI; Fed. R. Crim. P. 18. The Government bears the burden of proving by a preponderance of the evidence that venue is proper with respect to each count of a criminal indictment. *See United States v. Robinson*, 275 F.3d 371, 378 (4th Cir. 2001); *U.S. v. Bowens*, 224 F.3d 302, 308 (4th Cir. 2000). It is well-settled that "venue on a conspiracy charge may be laid in any district in which a conspirator performs an overt act in furtherance of the conspiracy or performs acts that effectuate the object of the conspiracy, even if the defendant charged with the conspiracy never entered the district." *U.S. v. Smallwood*, 293 F.Supp.2d 631, 637 (E.D. Va. 2003)(citing *Hyde v. United States*, 225 U.S. 347, 356-57 (1912); *United States v. Mitchell*, 70 Fed. Appx. 707, 711 (4th Cir. 2003)) (internal quotations omitted). "In determining venue . . . not only is the conduct of the defendant himself considered, but the conduct of anyone with whom he shares liability as a principal is as well." *Bowens*, 224 F.3d at 311 n.4; *see United States v. Al-Talib*, 55 F.3d 923, 928 (4th Cir. 1995)(holding that one co-conspirator's acts in the Eastern District of Virginia can be attributed to all members of the conspiracy, thus establishing venue for

4

all defendants). Further, "a defendant who is charged as an aider or abettor is subject to venue in any place where the principal could be tried." *Bowens*, 224 F.3d at 311 n.4.

## III. DISCUSSION

Defendant argues that the allegations do not establish that the Eastern District of Virginia is a proper venue for this matter because the alleged conspiratorial agreement was not formed in this district and the Government has not sufficiently proved that any act essential to the conspiracy took place in Virginia. Defendant submits that neither Von Zenon nor Williams, the purported buyer, had any contacts with Virginia. Defendant further contends that the alleged co-conspirators could have flown into any city in the region, thus the fact that they traveled through Richmond is not an essential part of the conspiracy. Finally, Defendant notes that the Government has not alleged that these persons possessed drugs while in Virginia, and accordingly, argues that venue is not proper in this district.

With respect to Count One, the conspiracy charge, the Government has shown by a preponderance of the evidence that venue is proper in the Eastern District of Virginia. While the proffer of money for the purchase of cocaine allegedly occurred in Maryland, at least one overt act occurred in the Eastern District of Virginia, namely, the use of Richmond as a meeting point. In order to evade law enforcement, the co-conspirators chose to fly through Richmond despite the fact that the transaction was to occur at a location three hours away in Maryland. Defendant seeks to minimize the choice to fly through Richmond as happenstance, but this suggestion of coincidence is undermined by the fact that the co-conspirators chose to bypass major airports in Baltimore and

5

Washington, D.C. that were closer to their destination in favor of the lower profile airport in Richmond. "[T]he overt act or acts necessary to support venue in a conspiracy case do not have to be substantial," *Smallwood*, 293 F.Supp. 2d at 637-38 (quoting *Mitchell*, 70 Fed. Appx. at 711)), and in this case, the deliberate travel through Richmond to avoid detection by law enforcement is sufficient for venue as to the conspiracy charge. *See Al-Talib*, 55 F.3d at 928 (acts in furtherance of conspiracy include arrival by plane in district and travel by car through district) (cited in *United States v. Smith*, 452 F.3d 323, 335 (4th Cir. 2006)).

With respect to Count Two, the Government alleges that Defendant is liable for his own acts and also for aiding and abetting the attempted possession with intent to distribute cocaine. Williams provided nearly $1.5 million of the $2.5 million purchase price for the cocaine at the January 2012 meeting in Von Zenon's Maryland apartment, where Von Zenon also acted as a look-out for law enforcement. After counting the money in Von Zenon's apartment, the co-conspirators returned to Richmond in order to facilitate the transaction. Although the proposed transaction was ultimately unsuccessful due to the arrests of Williams and Von Zenon, the cooperating sources and "Santana" continued to act in accordance with their agreement by traveling to Richmond in order to arrange the delivery of cocaine from Richmond to Maryland. Venue is proper not only where the defendant acts overtly, but also where any principals act to further the commission of an offense that the defendant has aided and abetted. Von Zenon's actions in Maryland were designed to facilitate a transaction that was based on the understanding

that the drugs would ultimately be sent from Richmond to Maryland. For these reasons, the Court finds that venue is proper in the Eastern District of Virginia as to Count Two.

Where venue is proper, a district court nonetheless has the discretion to transfer the case to another district. *Smallwood*, 293 F.Supp.2d at 639. Defendant's argument for transfer to the United States District Court for the District of Maryland is based entirely on Defendant's assertion that venue is improper in this district, an argument that this Court rejects, as explained above. Defendant offers no arguments in support of his Motion with reference to the factors that the United States Supreme Court developed in *Platt v. Minnesota Mining Co.*, 376 U.S. 240, 243-44 (1964) in order to guide district courts in exercising their discretion. *See id.* at 640.[2]

Still, an examination of the disposition of this case with respect to each of the defendants reveals that there is a special consideration affecting the transfer analysis, and therefore, that the tenth *Platt* factor weighs considerably against transfer. Five (5) defendants[3] in this matter have resolved the charges against them in this Court by plea agreement, and the last surviving defendant, Dion Williams, is presently scheduled to stand trial along with Defendant in this Court. Each of the prosecutions arises from the same conspiracy, and thus the Government may conserve its resources by proceeding

---

[2] These factors are as follows: "(i) the location of the defendant; (ii) the location of possible witnesses; (iii) the location of the events at issue; (iv) the location of documents and records; (v) the disruption of defendant's business; (vi) the expense to the parties; (vii) the location of counsel; (viii) the relative accessibility of place of trial; (ix) the docket condition of each district; and (x) any other special elements which might affect the transfer." *Smallwood*, 293 F.Supp.2d at 640.

[3] Oscar Gonzalez-Martinez (a/k/a "Pedro Santana"), the third defendant, has not yet been arrested in this matter.

7

with Defendant's trial in this Court. *See id.* (finding that it was reasonable for the government to try the remaining co-conspirators in the same district where twelve co-conspirators had previously been prosecuted successfully) (citing *United States v. Smith*, 412 F.Supp.1, 4 (S.D.N.Y. 1976)("The interests of justice and judicial economy would be enhanced by trying all defendants in the same district."); *United States v. Donato*, 866 F.Supp.288, 294 (W.D. Va. 1994) (denying venue transfer to allow the action to proceed in a unified fashion)). Given this special consideration, and in the absence of any other arguments in support of transfer, the Court in its discretion declines to transfer this case to the United States District Court for the District of Maryland.

## V. CONCLUSION

For these reasons, the Court DENIES Defendant's Motion to Change Venue.

Let the Clerk send a Copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

/s/
Henry E. Hudson
United States District Judge

Dated: **Nov. 2, 2012**
Richmond, Virginia